LION OIL REFINING COMPANY *v.* BOYD.

4-4716

Opinion delivered July 5, 1937.

</div>

428

*John M. Shackleford* and *Tom Kidd,* for appellant.

*Alfred Featherston,* for appellee.

GRIFFIN SMITH, C. J. Appellee was given judgment for $600 on a jury's verdict based upon findings that he stumbled and fell over an iron intake pipe in the sidewalk between J. L. Webb's filling station and gasoline pumps on the outer, or street, side of the Webb station at Delight, sustaining painful injuries to his back; that the intake pipe was owned by appellant; that it was 2½ inches in diameter and protruded 4½ inches from the sidewalk, and that maintenance of the pipe in the position and manner complained of was an act of negligence upon the part of appellant. It was shown that the accident occurred at night after lights at the filling station had been turned off, with the result that incidental illumination from an adjacent drug store and a distant street light was insufficient to reveal to appellee the presence of the obstruction.

Appellant's answer was in part as follows:

"Defendant denies that it is a corporation, doing business in the state of Arkansas, and maintaining a place of business at Murfreesboro, Pike county, operated by H. W. Tull as its agent; denies that it also main-

tains and controls two gasoline pumps, underground tanks, and pipes used as an intake and connecting pipes for same at the filling station operated by J. L. Webb on the south side of Antioch street in the town of Delight in Pike county, Arkansas.''

Although there is a denial by appellant that it maintained and controlled the intake pipe, there is no denial of ownership. Neither is there a denial that H. V. Tull is its agent in Pike county.

Appellant went to trial without questioning the sufficiency of service, and appellee called Tull as a witness. He testified that he was agent for the Lion Oil Refining Company and that the company owned the underground tank and intake pipes at the Webb Filling Station, having acquired them from the Standard Oil Company. His testimony in this respect was directed to his knowledge of ownership of the property, and the fact of his agency was merely incidental, or explanatory.

Appellant urges that the court erred in giving appellee's instructions Nos. 1 and 6, and in refusing appellant's instruction No. 6. It is also urged that an instructed verdict for the defendant should have been given.

Existence of the offending pipe near the center of the sidewalk is established. Ownership by appellant is not denied. The fact of ownership by appellant was testified to by H. V. Tull. Appellee's instruction No. 1 reads as follows:

''You are instructed that if you find from a preponderance of the evidence in this case that the defendant through its servants and agents maintained and kept an intake pipe to an underground gasoline tank, which intake pipe protruded through the sidewalk in front of the Webb filling station at Delight in such a manner as to cause a pedestrian using such sidewalk to stumble and fall over said protruding intake pipe, and be injured thereby; and you further find from a preponderance of the evidence that the presence and danger of this intake pipe was known to the defendant, or by the exercise of reasonable diligence upon its part could have been known to it, and that plaintiff in the exercise of

ordinary care for his own safety without carelessness on his part did trip over said intake pipe and fall and by such fall was injured, then it will be your duty to find for the plaintiff.''

It is insisted that the instruction is erroneous because there was no evidence that appellant maintained the intake pipe, and that there was no evidence that the pipe was in fact in the sidewalk. On the question of location—that is, sufficiency of proof that the area used in front of the filling station and from which the pipe protruded formed a part of the sidewalk—we think the objection is not well taken. Plats filed as exhibits ''A'' and ''B'' to the testimony of O. A. Owen, a contractor at Delight, show the various locations, with measurements, and this testimony is not disputed.

J. L. Webb testified that he owned and operated the filling station in question, and that land conveyed in his deed extended to Antioch street, but that he did not own the tanks or intake pipes. ''When I first went there, there was one tank, and now there are two. I have a cover that extends out over the concrete and it is made for a drive-in station. It was concreted in 1930 and since then there has been no change made. I could not tell you whether the Standard Company owns the pipe or tanks. I have been using Lion Oil Company products since May, 1936. This company has never made any changes around there.'' [The accident is alleged to have occurred July 25, 1936.]

The most difficult question of determination is whether, under the evidence, the jury was justified in finding that appellant maintained the intake pipe. Taking the testimony as a whole, it is shown that an area twenty feet wide and forty-eight feet in length in front of the garage was used as a ''drive-in.'' On the street side in approximate alignment with the thoroughfare, there were two gasoline pumps, 8½ feet apart, and on the west and east sides of the pumps were piers, spaced twelve feet apart. Directly south of the west pier, at a distance of 2½ feet, an intake pipe had been set in the concrete, and three feet southwest of the east pier a second intake pipe likewise protruded from the concrete.

The latter was the pipe appellee stumbled over. The record does not clearly show whether all of the area between Antioch street and the sidewalk was concreted, but that is immaterial. It is satisfactorily established that the north eight-foot strip of the Webb station area was used as a sidewalk, and that the intake pipe was in that part used by pedestrians.

Although appellant's interest in the property related only to its utility in connection with storage and sale of its gasoline, and appellant did not, in the ordinary sense of the term, "maintain" the pipe by any process of repairing, or by original installation, it did use these owned facilities as a means to an end. The testimony shows that persons other than appellee, in walking on the sidewalk, had stumbled over the pipes. There is no proof that this had been brought to the attention of appellant during its brief period of ownership. However, ordinary experiences and casual observation should have suggested to appellant the possibility of danger to pedestrians, and this danger would, of course, be intensified at night, in the absence of sufficient light.

The objection offered to appellee's instruction No. 6 is that there was no testimony that the defendant exercised any control over the filling station or the intake pipes, and no testimony that appellee had been invited by appellant to use the sidewalk. The mere fact that the concreted area used by pedestrians was a sidewalk constitutes a continuing invitation to use it for that purpose, and he had this privilege as a matter of right. The question of appellant's control over the pipe has already been discussed.

Appellant requested instruction No. 6, as follows:

"You are instructed that the defendant, Lion Oil Refining Company, did not own or maintain or have control of the premises on which the pumps and fill pipes thereto were located, but that these premises were under the control of James L. Webb and if through any negligence on the part of the same James L. Webb the plaintiff was caused to fall and be injured as alleged,

then this defendant, Lion Oil Refining Company, could not be responsible for any negligence of James L. Webb and your verdict will be for the defendant.''

By this instruction the court was asked to tell the jury that appellant would not be liable unless it owned or maintained or had control of the premises on which the pipe was located. The court was further asked to tell the jury, as a matter of fact, that the premises were under the control of J. L. Webb. There is evidence to show that the underground tanks and the pipes in question were owned by appellant, and that appellant had access to them, and that they were used in the regular course of appellant's business for the mutual convenience and profit of appellant and Webb. The instruction was properly refused.

In *Standard Oil Company of Louisiana* v. *Hodges,* we said:

''We know of no duty resting upon pedestrians traveling on sidewalks constructed for their use to keep a lookout for protruding pipes negligently maintained therein by others and especially for small pipes protruding only two and one-half inches above the walkway. Of course, if the obstruction had been large enough to attract the attention of any one passing along such a duty may have rested upon those using the walkway.''

The same rule of law is applicable to the instant case. The only material difference is that the pipe over which the appellee stumbled in the Hodges case was smaller than that which occasioned appellee's injuries in the appeal now before us. In the Hodges case the accident occurred in daytime; here, appellee was using the sidewalk after dark.

The judgment is affirmed.